Our final case for this morning is United States v. Billy Robinson. Mr. Albee. That's not the right way. Just press it again and it'll go the other way. The issue in this case is whether the court's references to extraneous and inappropriate matters at sentencing constituted procedural error. They did because the court's remarks make it impossible to determine what motivated the court's choice of sentence. The court's remarks also create, at the very least, the perception that the court actually relied on those inappropriate and extraneous matters in choosing its sentence. I want to begin by talking about the court's remarks about past, present, and future writing. And I want to preface those remarks by acknowledging that I'm going to engage in a slight bit of speculation about what was going through the judge's mind. And I think that's one of the problems with these types of remarks, is that they do invite speculation. They do invite questions about the fairness of the proceeding. And the court began by talking about 1967 and the rioting that was taking place in Milwaukee at that time. And the judge obviously had some pretty vivid recollections of what happened at that time, and he seemed somewhat upset, perhaps even still bitter about that. He was sacrificing at that time to go perform his patriotic duty by serving overseas in combat. And as he's preparing to do that, he can't get to the airport in his own city because of the rioting that's going on. So while he's trying to serve, others are presumably destroying property and rioting. And that seems to remain a sore spot for him nearly 40 years later. And it seems those feelings seem to have been resurrected by Baltimore. Now, of course, the riots in 1967 have nothing to do with Billy Robinson, with heroin trafficking, with what would be an appropriate sentence in a case like this. And as I said, these feelings seem to be resurrected by the Baltimore riots, which are ongoing at the time of this sentencing. The National Guard is still occupying Baltimore at this time. There's concern that riots will spread to other cities and there had been some civil unrest elsewhere at the time. And again, Baltimore has nothing to do with Billy Robinson, heroin trafficking, or an appropriate sentence in this case. And what Baltimore brings out in Judge Branda's mind is he's concerned about what might happen in present-day Milwaukee, because he probably sees some associations, some similarities between Baltimore and Milwaukee. So, Mr. Albee, I mean, I totally agree with you that Judge Branda says a lot of things that are extremely far afield from anything Mr. Robinson was doing or anything that should have been brought up. I understand the government's argument to be roughly, notwithstanding that, if you delete all of the inappropriate things from the sentencing transcript, there's enough left over, it reminds me a little bit of a Franks hearing or something, there's enough left over that is appropriate under 3553A, his bad criminal record, the fact that it's heroin, the fact that even though it was only two months, he was, at least for that time, a significant dealer, or participant, I mean. So maybe you could talk about that for a minute. Well, I think the courts addressed those kinds of concerns in Figueroa and Smith. I think it's Figueroa where the court says that the court's remarks on extraneous matters undermine all else that is said. And I think that's what we have here, because as I said at the outset, we don't know what motivates the court's ultimate decision about sentence in this case. Of course, we, forgive me, but we affirmed in Wilson with similar remarks. What do you, you know, while you're speaking, if you could tell us what makes this case more like Figueroa and Smith and less like Wilson, that would be helpful. I think there's been a few things, Judge. I think there's been some evolution in the approach. I'd note that Wilson, those were all 2010 cases. I believe Wilson came first, followed by Smith and Figueroa. I think there's some evolution in the court's thinking about these cases. I also, it appears that the comments in Wilson are a little bit less inflammatory, and it appears the sentence is better explained. At least the court seems to be much more satisfied with the remainder of the remarks. Here, I think there's even greater concern than there was in Figueroa and Smith, because in those cases the judge had comments about things that were distant, things that were happening in Mexico or southwest United States or somewhere across the globe, whereas here he has concerns, fears even, about what might happen in his hometown, Milwaukee, at that very moment. I think this goes beyond all three of those cases. In this case, there's no really rational link between the riots and heroin trafficking or Billy Robinson. In those cases, as far flung as it was, there at least was, he was talking about the effects of drugs in those other places. Here, we don't even have that. We also have, in this case, the judge's references as well to the, I'm sorry, we also have in this case as well, the judge's, I think, failure to fully address Billy Robinson's significantly lesser role in this offense. And that's something Wilson did not have. There was not identified some other failure in addressing the 3553A factors. That's present in this case. It was also, I think, present to some extent in Figueroa and Smith. No, I thought he did, though. He touches on that. He says, you know, maybe it was a shorter time, but unlike Duverger, Mr. Robinson had accumulated a pretty miserable criminal history. And so even though I realize the government was recommending a below-guideline sentence and counsel for Mr. Robinson even further below, the judge says, you know, I think you need to be deterred. Nothing else is getting through to you. And if all the rest of this stuff hadn't been in there, I don't see why that's any worse than what we usually see. Well, I think there's excessive focus on criminal history to the exclusion of considering that role. And he made some slight references to that. He says to you, you're the attorney, right? He says you made the argument that, you know, you're a bit player. I don't know if he says anything else beyond that. But the bit player suggests to me that he realizes that it wasn't a very big role. Right. The judge focused a little bit on the addiction problems of Duverger, but there was no mention. I think nine firearms were found in their unit along with a lot of ammunition, and it was two years versus two months of time. And I think there's some hyperbole exercised by the judge in terms of the record as well. I mean, I've had clients with, unfortunately, worse records than Billy Robinson in that court. I mean, his priors were .27, I think, and .12 grams of cocaine. They're very small amounts. They're very small amounts. There was no violence in Mr. Robinson's history. I mean, it's somewhat of an exaggeration. I mean, the history is bad on that. I acknowledge that. But you have to consider his role in this. I'm not here on substantive unreasonableness, but I do think those are considerations and what concerned me about the procedure there. Well, you were worried a little bit about the fact that he mentioned what a light sentence that he got in an earlier crime, maybe probation or something. I don't remember exactly what it was complaining about. The problem is, of course, everything seems to just string along from one to the next. Even though a short sentence doesn't seem to matter, he seems to get right back into trouble. And I guess that's what Judge Rand was looking at. Judge Rand did mention a sentence in Chicago, and he expressly said he was not going to penalize him for what had happened there. I think at the same time, sentences he had gotten in the 90s for .27 and .12 grams of cocaine in Milwaukee had been excessive. I mean, extreme. So, I mean, that could go both ways. You can save your last minute for rebuttal. That's fine. Thank you. Mr. Lipscomb. I'm going to place the court. I'm Bill Lipscomb with the U.S. Attorney's Office in Milwaukee. I don't know how to work this podium, so I'm not going to try to bring it down. It goes back and forth. So when you press it once, it goes up. When you press it the next time, it goes down. Let me just start with the reasons that the judge articulated for the sentence he chose. But I wish you would in the full context, because the one other point I'll make about this unfortunate line of Judge Randa cases is that the only presidential opinion is Figueroa. Webster, Smith, Wilson are all non-presidential dispositions. And the fact of the matter is there's a deeper look at the facts and everything else in the presidential things. I don't know how you disentangle these wild remarks he makes in this particular case from what are certainly conceitedly some legitimate points he raises. Well, I'll get to that, and I'll address it directly. But when you start with what the judge says in a context of saying this sentence can be no less than this, right? But he also says you weren't even born yet when the 1967 Milwaukee riots were happening. And look at all this stuff going on in Baltimore, the Freddie Gray riots. And he talks about when I visited my girlfriend, it was a mixed neighborhood, which I don't even know what that means. I don't want to think about what it means. These are not pertinent to Mr. Robinson in the slightest. Could I pile on? I want to pile on. Isn't that terrible? No, that's fine, Judge. What I'm trying to figure out is how we assess whether the judge's distress about the ongoing riots in Baltimore affected the sentence here. Because he seemed to be tying the characteristics of the defendant to the causes of riots in Milwaukee and other cities. And it's not as if these are random remarks. They seem to be related to his reasoning. And that's what's painful here. Actually, I'm going to disagree with you, Judge. I don't think they are. No, no, you're not allowed to do that. I think a couple of points just to set this out. I think when Judge Randa sentences a defendant, he's looking the person directly in the eye. And he's directing his comments, which often have sort of a moral tone, directly to the defendant. He's engaging him. One of the things I think that actually comes out in Smith, which is probably more parallel than this case, is that the judge sometimes finds touchstones of his own experience that relate to the defendant's experience. I know something about that neighborhood where you lived. But that is a problem. That is extra record. We don't know what he's thinking about it. We don't know if he's upset that it's now a racially mixed or even a neighborhood with the opposite racial characteristics from the one he remembers. We don't know why he thinks urban decay is this defendant's fault. I mean, he may be well-intentioned. I'm not in any way questioning the purity of his motives. But this is not the way you sentence people. Right. I think in his defense, he's trying to ask the defendant to look at it from the bigger picture. And he could say that without dragging in Baltimore and everything else, Hitler's dog and Figueroa. I mean, you know, it's just... I agree. And the writing, I think, and I'm sure we made this point, I think it's the most troubling part of his comments. I'm troubled by his references to it was safe then to go into this neighborhood because it was just then becoming mixed. I don't like that. I think you could put all of those comments together and suggest that there's a disturbing racial overtone to the judge's perceptions in this case. I think that's not what drives the sentencing at all.  And here's how, and it's where I wanted to start. The judge says the sentence can be no less than. First, he compares it to Duverger. And he says it cannot be what she got because their records are so disparate. And because she had a drug problem, he sees her sentence as different. And I actually asked him to conflate them. The second, he says, the last sentencing that you received... But he doesn't say anything like except that she was in this for two years and you were in it for two months. But that's very much clear from the record, Judge. It's very much clear from the PSR. But then he says, and this is his important point... She's white though, isn't she? Ms. Duverger was white. She was. He says that the sentence cannot be less than the sentence you got last time. And the sentence he got last time was six and a half years. The judge in this case gave him seven years, right? A half a year more than he got in the last sentencing for a drug trafficking crime, street-level drug trafficking. Essentially not that much different than he got here. Because the question in the judge's mind, so we asked him to look at is, how much time is necessary, no greater than, to get it through to this defendant that he's got to stop the street-level drug trafficking? He gave him a half a year more than what he got last time. Half a year more than the case that he was on supervision for at the time of the offense. And he went back and looked at the defendant's criminal history as well, which was, I think, three juvenile convictions, eight adult convictions in 21 years, 13 other separate arrests. The judge rightly said it was a horrific record. Well, it's a bad record, but the content, I mean, it's not like he was out murdering people. It was, I can imagine, I've seen worse records too, I'm sure you have. Sure, but in the context of what we're looking at, we're looking at recidivism, right? What do we have to do to address this defendant's deterrence, specific deterrence for this defendant, to make sure he doesn't do it again? The judge utterly brushes off his idea that maybe he should just move away from Milwaukee, go down to Mississippi, get out of the bad influences that he's been in all this time. And the judge says, oh, what are you going to do with the other couple of kids? Yes, I see that. I think it's a good idea for folks to move away and start anew someplace else. To me, that makes a lot of sense. He was directing, again, back to sort of his moral focus on when he's talking to a defendant here, but you need to take care of your kids as well. He says it in kind of a backhand way, but his focus is you can't just abandon them. You need to take care of your kids. And that's the kind of way he's engaging with the defendant at the time. That's the context that I see it. Look, we all know that Judge Rand is a very wonderful person. And there's no question about that. But some of this rhetoric is just terribly worrisome. And we don't know how to divide it up, how to compartmentalize it. You know, Judge, I think particularly, I'm going to say this very frankly, in the time period that the judge is sentencing the defendant, right, kind of in the wake of the Baltimore riots and the unrest and concerns about racism in the criminal justice system, it's really unfortunate, right, and it's disturbing. But if you look at this in a really specific context and say what does he do here, but also how does that reference to the Baltimore riots relate to anything? Mr. Albee points out he says it's really extraneous. There's no rational link to the defendant. I think that's really true here, right? The judge is just sort of engaging in social commentary at that point that has really nothing to do with Mr. Robinson. It is a wholly extraneous statement. His real focus when he gets to it is your criminal history. I can't give you less than you got the last time, which is six and a half years. I'm going to give you seven. And that's what he did. So in the court, in its review, trying to find what did the court say enough, right, do the statements that the court made allow us, and I see my time is up, but I'll conclude. You have a minute. To find the rational basis for the court's decision. Yes, the court did. The court laid out what its reasoning was. The sentence has to reflect just punishment, giving the seriousness of the crime its effect on the neighborhood. The sentence has to deter the defendant, who has been at this point undeterrable, and the sentence has to protect the public from the defendant's ongoing criminal activity. Six and a half years wasn't enough last time. I'm going to give you seven this time and hope it works. That's essentially what the judge did here. Essentially what you're trying to say is if you redact all the extraneous stuff, it's going to be the same sentence. And then that might look right. And if it's demanded, that's probably what he would do, and you'd eliminate all that stuff. But I think that's your argument. If you took all that other stuff out about who he dated and what that sort of thing, that it would be the same sentence. You know, I wouldn't make that argument that way, Judge. I would say that the court has to do what the cases say the court has to do, which is look at the sentencing transcript as a whole, and as a whole decide whether or not the court has confidence in what the judge did here and the reasons the judge gave. And if there is a perception of unfairness here that seems to have driven the sentence or a real question about what the judge did here and why, I think the court has to send it back. But if the court can say at the bottom line, here's what the court did and I understand why, because he gave that six-and-a-half-year cut up, there's no reason to send it back. And we'd ask it to affirm. All right. Thank you very much, Mr. Lipscomb. I think you have a minute, Mr. Albee. The question of whether Judge Randa felt differently about Mr. Robinson than Mr. Verge because of what had happened in the neighborhood, whether he felt differently because of the riots in Baltimore or the riots in Milwaukee in 1967, whether it was because of a different criminal record, we just don't know. And that's the problem here. I don't think there's any opportunity for meaningful appellate review because we can't tell what went into that sentence. Mr. Lipscomb talks about, well, we can look. He said the reason is he got six-and-a-half last time and he got seven this time. But, of course, that shouldn't be what we assume drove Judge Randa's sentence because he talked about all these things. And he did talk about the one connection he made between Mr. Robinson and the rioting is that they seemingly both had a component in the judge's mind of a lack of self-discipline or a lack of self-responsibility. In fact, you can't even tell to whom he's applying that phrase, whether it's to rioters or to Billy Robinson or to both because it's the bridge that links them. I think this case is on all fours with FICAROA. The improper references undermine all else that the judge said at sentencing, and I ask the court to vacate and remand. All right, thank you very much. Thanks to the government as well. We will take the case under advisement, and the court will be in recess.